# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

July 9, 2014

The Honorable Margo Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: **United States v. Tushar Walia (14-CR-213)**

Dear Judge Brodie:

  We represent defendant Tushar Walia in the above-captioned matter. We write to request an order from the Court barring the government from reviewing any electronic correspondence between Tushar Walia and any e-mail account associated with the Federal Defenders of New York sent through Bureau of Prison's email system (TRULINCS).

## BACKGROUND

  By letter dated June 9, 2014, the United States Attorney's Office for the Eastern District of New York informed our office that "e-mails exchanged between inmates and their attorneys using the TRULINCS system are not privileged, and inmates have other means to communicate with their attorneys in a privileged setting. Accordingly, this office intends to review all email obtained from the TRULINCS system." Defendant's Exhibit A, June 9, 2014 letter to Federal Defenders. Previously, upon information and belief, it was the practice of the United States Attorney's Office to use "taint teams" to 1) identify communications between attorneys and their clients, 2) separate them from other e-mails, AND 3) disclose them to defense attorneys under separate cover. In response to the letter, we contacted the assigned assistant to inquire as to the applicability of this new policy to the instant case. The government represented that it had not yet reviewed attorney-client communications but that the issue was still under consideration for the office. We requested that the office inform us if it intended to review attorney e-mails so that we could first raise the issue with the Court.

  The government opted not to provide notice to the defense of their decision. By letter dated June 9, 2014, the government produced *inter alia* all of Mr. Walia's e-mails including the e-mails between him and undersigned counsel, one of his attorneys. This discovery batch included e-mails that were exchanged between undersigned counsel and Mr. Walia before the government served notice to our office of its intention to review our attorney-client communications.

# ARGUMENT

We are deeply troubled by the United States Attorney's Office's decision to review attorney-client communications. Electronic correspondence is an integral component of the attorney-client relationship and there is no meaningful substitute. While we do not contend that these communications are privileged as a matter of law, their need for them to remain confidential is critical to effective our ability to provide meaningful Sixth Amendment representation to our indigent clients.

It is well-settled that federal courts have broad powers to control their proceedings, including over matters related to discovery. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (Federal court's inherent powers arise from "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (citation omitted); *United States v. Sachakov*, 812 F. Supp. 2d 198, 206 (E.D.N.Y. 2011) (noting that federal courts have "broad discretion" to "fashion[] appropriate remedies in both civil and criminal matters."); *United States v. Taylor*, 25 F.R.D. 225, 228 (E.D.N.Y. 1960) (court retains inherent power relating to matters of discovery); *see also Geders v. United States*, 425 U.S. 80, 86 (1976) ("Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice . . . . The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process.") (citation omitted). The court's inherent powers are even broader in criminal matters, *see Crawford v. United States*, 212 U.S. 183, 194 (1909), and may be invoked to protect a party's legal rights. *See Shipp v. Todd*, 568 F.2d 133, 134 (9th Cir. 1978) (federal courts have inherent power to expunge criminal records "'when necessary to preserve basic legal rights.'") (citations omitted).

Here, the government's decision to read all of our communications with Mr. Walia over TRULINCS frustrates his right to access of counsel. As the Supreme Court has said, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland v. Washington, 466 U.S. 668, 685 (1984) (citations omitted). The right of access to counsel is even more crucial now, pre-trial, as this is the "most critical period of the proceedings . . . when consultation, thorough-going investigation and preparation are vitally important[.]" Massiah v. United States, 377 U.S. 201, 205 (1964) (internal marks and citation omitted). This is especially true here. Here trial is scheduled for July 28, 2014. It is crucial at this time that Mr. Walia not be restricted from actively participating with counsel to prepare his defense.

Failing to properly communicate with clients is an ethical violation. ABA Model Rule 1.4 Communication states that a lawyer "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" and shall

1. promptly inform the client of any decision or circumstance with respect to the client's informed consent, as defined in Rule 1.0(e) . . . ;
2. reasonably consult with the client about the means by which the client's objectives are to be accomplished;

3. keep the client reasonably informed about the status of the matter;
4. promptly comply with reasonable requests for information; and
5. consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

As an office, is our hope that we far exceed the baseline ethical rules governing the attorney-client relationship. E-mail allows us to meet these requirements in the most effective manner. It is simply not feasible to physically travel to the jail to inform a client of a date change, or ask a one sentence question about a piece of discovery that's been turned over, or to get a phone number for a family member who might be willing to serve as a suretor. The practical uses of the TRULINCS system for the attorney-client relationship are nearly limitless. It is tremendously efficient and allows busy public defenders to tend to all of their clients in a heavy caseload all at once.

There is no meaningful substitute for e-mail. The MDC does not accept mail sent via expedited mail services, and it can take two or more weeks for an inmate to receive U.S. mail – which, of course, does not include the additional time it will take for us to receive his response. Travel time for even a brief in person conversation with our clients can take anywhere from 30 minutes to an hour. Then, it is not uncommon to wait upwards of two hours to gain access to the jail and for our clients to be brought down. While in-person visits will of course be necessary, it is considerably more cost-effective and efficient for us to communicate with Mr. Walia via TRULINCS than to expend significant time – and scarce public resources – traveling to and from the MDC or seeking approval for an un-monitored telephone call each time we need to speak with him about his case. Unmonitored telephone calls are not practical solution. Each of these calls must be pre-approved and arranged in advance. Finally, it is generally not possible for counsel to initiate phone calls with our clients without obtaining approval first.

The government contends that this policy shift is not intended to gain any sort of strategic advantage. Instead it has argued that the process of segregating attorney-client e-mails is an administrative burden that their office is unwilling to take. In granting an identical motion for the defense, The Honorable Dora L. Irizarry flatly rejected this argument and observed

> [T]he executive budget is far bigger than the judiciary's budget, okay, and the defense budget. So forgive me if I'm not overly sympathetic to the issue of the government have to put up a taint team in order to avoid having to look at attorney client e-mails, because the burden – and you mention at a time of furloughs and hiring freezes. Well you know what, the Federal Defenders were furloughed last year.

Defendant's Exhibit B. Transcript of proceedings. United States v. Ahmed, (14-CR-277) 18:11-18:18. Judge Irizarry's observations about our office is insightful. Just last year, our office, along with other Federal Defender offices were "buckling under the effects of the $85 billion across-the-board cuts known as the sequester" See "Public Defenders are Tightening Their Belts Because of Steep Budget Cuts" New York Times August 23, 2013. *Available at* http://www.nytimes.com/2013/08/24/us/public-defenders-are-tightening-belts-because-of-steep-federal-budget-cuts.html?pagewanted=all&_r=0. In addition to the furloughs, a number of staff members lost their jobs because of budget issues. Today, we struggle to even match the level of

staffing we experience pre-sequester. The government's policy effectively eliminates e-mail as a means of communicating with our clients and effects a tremendous strain on our limited resources. We urge the Court not to allow the government to burden the Sixth Amendment in this way.

For the reasons set forth above, we respectfully request that the Court order the government to segregate and not review any emails sent between Tushar Walia and his attorneys of record in this action via the TRULINCS system.

Respectfully,

/S/Len Hong Kamdang
Len Hong Kamdang
Counsel to Tushar Walia
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Fl.
Brooklyn, NY 11201
(718)407-7414

/S/Amanda Lisa David
Amanda Lisa David
Counsel to Tushar Walia
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Fl.
Brooklyn, NY 11201
(718)330-1208

Copies to:

Chambers of the Honorable Margo Brodie (via hand delivery)

Government Counsel of Record: Michael Robotti and Nadia Moore (via ECF and E-mail)