UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

UNITED STATES OF AMERICA,

    -  against   -

TUSHAR WALIA,

                    Defendant.

-------------------------------------------------------------

NOT FOR ELECTRONIC OR
PRINT PUBLICATION

**MEMORANDUM & ORDER**
14-CR-213 (MKB)

MARGO K. BRODIE, United States District Judge:

On April 10, 2014, Defendant Tushar Walia was charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute a controlled substance, and attempted possession with intent to distribute a controlled substance, which substance contained XLR11, in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Sections 2 and 3551 *et seq.*  On June 26, 2014, Defendant was charged in a five-count superseding indictment with conspiracy to distribute and possess with intent to distribute a controlled substance, attempted possession with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, conspiracy to import a controlled substance, and importation of a controlled substance, which substance contained XLR11, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1), 963, and Title 18, United States Code Sections 2 and 3551 *et seq.*  Currently before the Court are the parties' numerous *in limine* motions.[1]  As discussed below, the parties' motions are granted in part and denied in part.

---

[1] The Court assumes familiarity with the facts of this prosecution which are set forth in more detail in the Court's July 18, 2014 Memorandum and Order deciding Defendant's motion

## I. Scienter requirements of 21 U.S.C. §§ 841 and 960

The government seeks a ruling from the Court that, under 21 U.S.C. §§ 841 and 960, the government need only prove that Defendant knew he was trafficking an illegal drug. The government also seeks a ruling from the Court establishing that mistake of law is no defense to the crimes charged. Defendant contends that the government must prove that Defendant knew that he was trafficking a drug listed in the schedules of the Controlled Substances Act and that "good faith" is a defense to the crimes alleged. The government's motion as to these two issues is granted.

### a. The government must prove that Defendant knew that the substance at issue was illegal in order to sustain a conviction under § 841(a)(1).

Defendant argues that the government must prove his "*actual* knowledge of a substance's status as a federally controlled substance to sustain a [Controlled Substances Act] conviction." (Docket Entry No. 27 at 13.) The government argues that Defendant's knowledge that he trafficked some type of illegal drug is sufficient. (Docket Entry No. 37 at 2.)

"Under the Controlled Substances Act, it is a crime for 'any person knowingly or intentionally . . . [to] possess with intent to manufacture, distribute, or dispense, a controlled substance.'"[2] *Gray v. Keisler*, 253 F. App'x 78, 81 (2d Cir. 2007) (quoting 21 U.S.C. § 841(a)(1)). To convict under the Controlled Substances Act ("CSA"), Second Circuit case law makes clear that the government need only prove that a defendant knew that the substance at issue was a "controlled substance." *See United States v. Anderson*, 747 F.3d 51, 61 (2d Cir.

_____

to suppress statements and other tangible evidence. *United States v. Walia*, No. 14-CR-213, 2014 WL 3563426 (E.D.N.Y. July 18, 2014).

[2] The language under 21 U.S.C. § 960(a)(1), regarding importation and exportation, tracks § 841(a)(1). *See* 21 U.S.C. § 960(a)(1) (criminalizing the conduct of one who "knowingly or intentionally imports or exports a controlled substance").

2014) ("As to intentional possession and distribution of a controlled substance, the government must, of course, prove that the defendant 'knew he was dealing with a controlled substance.'" (quoting *United States v. Torres*, 604 F.3d 58, 66 (2d Cir. 2010))); *United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009) ("Although 21 U.S.C. § 841(a) makes it unlawful for a defendant 'knowingly or intentionally' to manufacture, distribute, or dispense (or possess with intent to manufacture, distribute, or dispense) a controlled substance, 'the law is settled that . . . it is sufficient that he [or she] be aware that he [or she] possesses some controlled substance.'" (quoting *United States v. Morales*, 577 F.2d 769, 776 (2d Cir. 1978))). The Second Circuit has used "controlled substance" interchangeably with "illegal drugs." *See Anderson*, 747 F.3d at 65 ("We next consider the evidence supporting Hakimi's awareness that the bag he was about to receive and transport contained contraband of some kind, and, if so, that the contraband was illegal drugs."); *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004) (noting that § 841(a)(1) and a conspiracy based on § 841(a)(1) "are specific intent crimes, requir[ing] the government to establish that [the defendant] knowingly and intentionally participated in the *drug deal*" (emphasis added)).

Defendant admits that "the government need not prove that [he] knew the specific type of controlled substance he agreed to possess and distribute to sustain a . . . CSA violation." (Docket Entry No. 27 at 12.) Defendant also agrees with the government that "proof of knowledge that the substance is illegal is sufficient." (*Id.*) Defendant argues, however, that "the Court must charge that [D]efendant knew that the substance at issue was on the proscribed list of 'federally controlled substance[s].'" (*Id.*)

In support of his argument that the government must prove that he knew the substance at issue was listed as a "federally controlled substance," Defendant cites three Courts of Appeals

cases.  Each fails to advance Defendant's argument.  In *United States v. Hassan*, the Second

Circuit held that the government must prove the defendant's intent to import and possess the

precise controlled substance at issue, "khat with cathinone."  *Hassan*, 578 F.3d 108, 134 (2d Cir.

2008).  However, *Hassan* dealt with an indictment that specifically charged importation of

"cathinone," rather than "'any' controlled substance" and therefore the government was "bound

by the scienter burden it assume[d] in the crimes it charge[d] . . . ."  *Id.* at 133–34; *see also*

*United States v. Andino*, 627 F.3d 41, 48 (2d Cir. 2010) (discussing *Hassan* and rejecting the

defendant's claim that *Hassan* required the government to prove "a cocaine-specific *scienter*

burden[,]" and stating that *Hassan* "takes pains to underscore its adher[ence] to [the] rule that

scienter with respect to the type and quantity of controlled substance is not required to convict a

defendant under the CSA."  (second and third alterations in original) (internal quotation marks

omitted)).  Here, the indictment, unlike that in *Hassan*, only contains charges relating to the

distribution, possession and attempted possession with intent to distribute, importation and

conspiracy to possess with intent to distribute and import "a controlled substance."  Therefore,

*Hassan* is inapposite.[3]  In *United States v. Caseer*, the Sixth Circuit stated that "to convict Caseer

properly of the charged offenses, the district court would need to have found beyond a

reasonable doubt that Caseer actually knew that khat contained *a controlled substance*."  *Caseer*,

399 F.3d 828, 841 (6th Cir. 2005) (emphasis added).  The court made clear that the government

need not prove that the defendant knew that the substance at issue contained the particular

controlled substances of cathine or cathinone, but only that "Caseer knew he would be violating

---

[3]  Indeed, in a footnote in *Andino*, the Second Circuit noted that "*Hassan* stands for the proposition that in drug cases based on cathinone-specific indictments, the trial court must construct especially clear and precise jury instructions.  But it in no way suggests that in drug cases based on type-specific indictments, the government must prove type-specific *scienter*."  *United States v. Andino*, 627 F.3d 41, 48 n.4 (2d Cir. 2010).

U.S. drug laws by importing a controlled substance." *Id.* at 844. Similarly, the last Court of Appeals case cited by Defendant, *United States v. Hussein*, directly undermines Defendant's argument. *See Hussein*, 351 F.3d 9, 18 (1st Cir. 2003) ("[T]he cases are legion that a defendant can lawfully be found guilty of having violated section 841(a)(1) even if he did not know the exact nature of the drug that he possessed as long as he knew that he possessed an illegal drug."); *id.* at 17 (approving of the lower court's jury instructions which stated that the government had to prove the defendant "knew that the substance he possessed contained a controlled substance[,]" and defining controlled substance "as any drug or other substance regulated under federal drug abuse law" (internal quotation marks omitted)). The Court also notes that in *United States v. Awad*, a district court, in the context of a khat containing cathinone trial, modeling a charge based on the jury charge in *Hussein*, instructed its jury that the government must prove, *inter alia*, that the defendant and his co-conspirators agreed to distribute "some substance controlled under *American* drug abuse law." *United States v. Awad*, 518 F. Supp. 2d 577, 586 (S.D.N.Y. 2007) (emphasis added). The Second Circuit subsequently approved of these instructions. *United States v. Awad*, 369 F. App'x 242, 246 (2d Cir. 2010) ("Defendants maintain that the district court's instructions to the jury were in error. We disagree.").

In sum, the government need only prove that Defendant knew that the substance in question was a controlled substance or "illegal drug," that is, a substance proscribed under federal drug laws, but need not prove, as the Court understands Defendant to argue, that the Defendant knew that the substance in question was on the list of federally controlled substances.

### b. Mistake of law is no defense

The government argues that mistake of law is not a defense to any of the charged crimes. (Docket Entry No. 25.) Defendant responds that "good faith" is a defense to the crimes charged.

(Docket Entry No. 27 at 18.)  Defendant argues that "as a matter of ordinary statutory construction, the requirement of knowledge in 21 U.S.C. § 841(a)(1) applies to the prohibited acts as well as to the prohibited objects . . . . Consequently, the Government must prove that [Defendant] acted with the knowledge that the seized substances were federally controlled." (Docket Entry No. 27 at 17.)

Mistake or ignorance of law is not a defense.  *See United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004) (holding that mistake of law is not a defense to § 841(a)(1)); *Hassan*, 578 F.3d at 122 (recognizing that "while ignorance of the law is no excuse, that principle may be abrogated when a law is so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct" but refusing to recognize any abrogation of the otherwise *de facto* rule that mistake of law is no defense in a § 841(a)(1) prosecution as the government must prove the Defendant's knowledge that the substance at issue contained a controlled substance). Nevertheless, Defendant is correct that his "good faith" lack of knowledge as to his possession of a controlled substance is a proper defense because, assuming it were believed by a jury, the government would fail to satisfy a necessary element of the crimes charged — Defendant's knowledge as to the illegality of the substance in question.  *United States v. Ramos*, No. 13-CR-2034, 2014 WL 2803994, at *5 (N.D. Iowa June 20, 2014) (accepting that ignorance of the law is not a defense, in an XLR11 prosecution, but noting that because the government must prove that the defendant knew she possessed an illegal substance, the defendant may argue that she did not know that she possessed a controlled substance and therefore, the government would not have proved the requisite knowledge).

## II. Evidentiary issues

### a. Relevance

Rule 402 of the Federal Rules of Evidence provides that generally, all relevant evidence is admissible, unless otherwise excluded by the Federal Rules of Evidence, the United States Constitution, a federal statute, or the Supreme Court. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the evidence is relevant, the Court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### i. Immigration/punishment consequences are irrelevant; immigration status may be relevant

The government moves to preclude any evidence or argument regarding the possible punishment and immigration consequences Defendant faces in the event of a conviction, arguing that such evidence is (1) irrelevant, (2) may invite jury nullification, and (3) is unfairly prejudicial and outside the province of the jury. (Docket Entry No. 25 at 5–7.) Defendant agrees that any evidence regarding the possible punishment and immigration consequences of a conviction is inappropriate to present to the jury. (Docket Entry No. 26 at 23.) However, Defendant argues that evidence or argument regarding his immigration status should be admissible because it is relevant to two "key" issues in this action: (1) Defendant's *mens rea* and (2) the coercive conditions under which Defendant made his post-arrest statements. (*Id*. at 23–24.)

Defendant argues that the government will seek to establish Defendant's *mens rea* by arguing that he used an "alias" in setting up his storage locker and bank accounts. (*Id.* at 23.) Defendant contends that his immigration status directly rebuts the claim that his use of a false identity reflects his guilty intent; rather, as an "undocumented immigrant," Defendant had no valid identification in his name and thus "had to use a false identity" to open those accounts. (*Id.* at 23–24.) In addition, because Defendant contends that his post-arrest statements were coerced due to comments from law enforcement regarding Defendant's immigration status, Defendant argues that his immigration status is relevant to his argument that Defendant's post-arrest statements were made under coercive conditions. (*Id.* at 24.)

As the parties agree that it would be improper for the jury to consider the potential punishment and immigration consequences of a conviction in this case, the portion of the Government's motion seeking to preclude such evidence or argument is denied as moot. To the extent the government is seeking to preclude any mention of the Defendant's immigration status during trial, the Court reserves decision on this issue in light of the Defendant's position that his immigration status directly rebuts the anticipated arguments by the government as to his *mens rea*, and as to the voluntariness of his post-arrest statements.[4]

### ii. Non-testifying officer statements may be relevant

The government seeks to exclude statements from Joseph Rannazzisi, the Deputy Administrator for the Drug Enforcement Agency, specifically, Rannazzisi's statements made before the Caucus on International Narcotics Control in the United States Senate on September

---

[4] It is unclear whether Defendant is arguing that *generally*, evidence of his immigration status should not be precluded or whether Defendant is arguing that his post-arrest statements regarding his immigration status are admissible. The Court notes that to the extent Defendant is arguing for the admissibility of his own out-of-court statements at trial, such statements are inadmissible hearsay, unless admissible on some other ground.

25, 2013, which were subsequently made publicly available on the Drug Enforcement Agency's website.[5] (Docket Entry No. 25 at 10.)  The government argues that these statements are inadmissible hearsay, not relevant and prejudicial and confusing.  (*Id.* at 10–11.)  Defendant contends that the relevance of Rannazzisi's statements will depend on the expert testimony put forth by the government and therefore, the Court should reserve ruling on this portion of the government's motion.  (Docket Entry No. 27 at 25–26.)

The government has represented that it intends to call Special Agent Justin Duralia to the stand.  (Docket Entry No. 31.)  Duralia has received specialized training in, among other topics, the identification of narcotics and has participated in numerous investigations involving synthetic drugs.  (*Id.*)  He will testify about, *inter alia*, the nature of synthetic drugs, the transport of XLR11 across international lines, domestic distribution and international and domestic wholesale pricing.  (*Id.*)  Defendant has moved the Court to either exclude his expert testimony or hold a *Daubert* hearing.  (Docket Entry No. 45.)  After the government's expert disclosure, Defendant did not revisit his argument with respect to Rannazzisi's statements.  However, it is likely that Defendant will seek to cross-examine Duralia about the subject matter of Rannazzisi's statements as done in *United States v. Chong*, --- F. Supp. 2d ---, 2014 WL 131662 (E.D.N.Y. Jan. 14, 2014), before Judge Jack B. Weinstein.

With respect to hearsay, Rannazzisi's statements, if relied upon and established as reliable by the government's expert, may qualify for admission under hearsay exception 803(18)

---

[5]  Joseph Rannazzisi discussed, *inter alia*, the popularity, variety, background, and history of synthetic cannabinoids.  (*See* Docket Entry No. 25 Ex A.)  Of particular note, Rannazzisi stated that the widespread use of synthetic cannabinoids may be due to, in part, the perception that the substances are legal alternatives to illicit drugs.  (*Id.* at 6.)

for statements in learned treatises, periodicals, or pamphlets.[6]  *See* Fed. R. Evid. 803(18); *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 24 (D. Conn. 2013) ("[I]f the report is . . . a treatise, periodical, or pamphlet and the statements contained therein are relied on by an expert witness on direct examination, the report may fall within an exception to the hearsay rule." (citations and internal quotation marks omitted)).

The government also argues that Rannazzisi's statements are not relevant.  The government contends that Defendant has not alleged that he was aware of a public misconception at the retail level that synthetic cannabinoids are legal and, therefore, any misconception at the retail level is irrelevant to Defendant's knowledge that he was trafficking in illegal drugs at the wholesale level.  However, Defendant has stated that he researched K2 and Spice, two synthetic cannabinoids mentioned by Rannazzisi, and from his research he concluded that he was engaged in a legal venture, making it less likely that he knew the substance in question was illegal.  Therefore, Defendant has arguably alleged that he was under a misconception at the retail level as to the legality of synthetic cannabinoids.  Furthermore, if the statement in question was in fact relied upon by Duralia, it would be relevant to his testimony.

Finally, the government argues that even if admissible under a hearsay exception and relevant, the Court should exclude Rannazzisi's statements as prejudicial and confusing.  Under Rule 403 of the Federal Rules of Evidence, a "court may exclude relevant evidence if its

---

[6]  Although the Court is not aware of any application of the learned treatise exception to statements made before the United States Senate and subsequently distributed online, this exception has been applied to a variety of materials suggesting it has a liberal scope.  *See Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 171 (2d Cir. 2000) (videotapes); *cf. Kansky v. Coca-Cola Bottling Co. of New England*, No. 05-CV-10908, 2006 WL 1167781, at *9 (D. Mass. May 1, 2006) (striking a newsmagazine article and website printouts not for being available online but due to the plaintiff's failure to establish their reliability), *aff'd*, 492 F.3d 54 (1st Cir. 2007).

probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. To be excluded, relevant evidence "must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006). It is unlikely that a brief discussion of any statement by Rannazzisi would lead to the confusion suggested by the government.

### iii.  XLR11's legality, prior to May 16, 2013, is irrelevant.

The government seeks to exclude any evidence concerning the legality of XLR11 prior to May 16, 2013. (Docket Entry No. 25 at 12.) The government argues that this evidence is irrelevant because XLR11 was illegal for over six months before the charged period of December 1, 2013, through March 11, 2014. (*Id.*) In addition, the government argues that even if the Court were to find that XLR11's legal status prior to May 16, 2013, is relevant, Defendant should still be precluded from arguing that XLR11 was "legal" because XLR11 was a "controlled substance analogue," as defined under 21 U.S.C. § 802(32)(A), prior to May 16, 2013. (*Id.*) Defendant moves to preclude the government from arguing at trial that XLR11 was a controlled substance analogue prior to May 16, 2013. (Docket Entry No. 27 at 1.) Because XLR11 was a controlled substance during the time period charged in the indictment, the fact that XLR11 was not listed as a Schedule I controlled substance prior to May 16, 2013, is not relevant and is therefore excluded.[7]

---

[7]  The Court notes that, as discussed during the telephone conference held on July 23, 2014, if the government seeks to introduce evidence concerning a narcotics conspiracy that predates XLR11's addition to Schedule I, the analogue status of XLR11 becomes relevant.

### iv. The relevance of the Department of Justice's policy regarding electronically recording post-arrest statements is moot.

The government moves to exclude evidence concerning the Department of Justice's recent policy announcement, which involves a requirement that certain agency components electronically record post-arrest interviews. (Docket Entry No. 25.) Defendant does not seek to introduce any evidence on this topic. The government's motion to exclude this evidence is denied as moot.

### v. Parveen Grover's statement to Defendant is relevant

Defendant moves the Court to exclude Grover's statement to Defendant that the packages Grover hired Defendant to re-ship contained substances that were not legal to possess in New York. (Docket Entry No. 45 at 15.) Defendant argues that the substance's legal status under state law is irrelevant to controlled substances prosecutions brought under federal law. (*Id.*) Defendant's knowledge that the substance in question was illegal under state law is relevant to his awareness of the substance's unlawfulness under federal law.

Defendant argues that the statement is unduly prejudicial and could confuse the jury in that they may believe that the trafficking of a substance unlawful under state law could give rise to a conviction under § 841(a)(1). However, jury instructions can make this distinction clear and remove any prejudice that may arise from the introduction of the statement. *See Awad*, 518 F. Supp. 2d at 587 (noting that "[t]he jury was repeatedly instructed that khat itself was not a controlled substance, making clear that any state laws criminalizing khat leaves as a whole were not at issue"), *aff'd*, 369 F. App'x 242 (2d Cir. 2010); *see also Adams v. City of New York*, --- F. Supp. 2d ---, ---, 2014 WL 309640, at *9 (E.D.N.Y. Jan. 29, 2014) (noting that jury instructions can be used to limit any prejudice stemming from evidence).

### b. Defendant's exculpatory statements may be admissible

The government also seeks to preclude Defendant from introducing "through cross examination or otherwise . . . his false exculpatory statements made to law enforcement officers" after his arrest, arguing that such statements are inadmissible as hearsay. (Docket Entry No. 25 at 7). The government contends that while it can introduce Defendant's post-arrest statements under the exception to hearsay allowing the admission of statements by an opposing party, offered against that opposing party, there is no hearsay exception under which Defendant can introduce his statements. (*Id*. at 9.) The government seeks to preclude, among others, approximately seventeen statements made by Defendant during his post-arrest interviews and in his recorded telephone calls from the Metropolitan Detention Center, including that Defendant searched "Spice" online and "found pictures of the colorful packets he saw in delis and gas stations;" he was told that the packages contained Whey; and that he thought that, because "he was not selling the 'artificial cannabis' he was not breaking the law." (*Id*. at 8.)

Defendant argues that the rule of completeness "overcomes" the government's hearsay argument by allowing a statement that would otherwise be hearsay to be admitted "if necessary to explain the admitted portion." (Docket Entry No. 26 at 21.) In addition, Defendant argues that there are "independent bases for admission of many" of the statements at issue, including that such statements are necessary to "ascertain the ability to recall, reliability, [and] bias" of the government's witnesses. (*Id*.)

Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A party's own statement, if offered against him, is not hearsay. Fed. R. Evid. 801(d)(2)(A). Thus, "[w]hen the government offers in evidence the post-arrest statement of a defendant . . . . the statement is not hearsay, because it is

simply a statement of the opposing party." *United States v. Marin*, 669 F.2d 73, 84 (2d. Cir. 1982); *United States v. Russo*, 302 F.3d 37, 43 (2d. Cir. 2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party."). However, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Marin*, 669 F.2d at 84; *United States v. Demosthene*, 334 F. Supp. 2d 378, 381 (S.D.N.Y. 2004) ("[A] defendant generally may not introduce his own prior statement for the truth of the matters asserted therein . . . . By seeking to introduce such statements, [the defendant] is, in essence, attempting to present a second version of his own admissions in order to permit the jury to decide which of the two versions to credit . . . . [s]uch a substantive comparison . . . would not be admissible under either Federal Rule of Evidence 801(d)(2)(a) or the Second Circuit's holding in *Marin*.").

The "doctrine of completeness," which is set forth in Rule 106 of the Federal Rules of Evidence, provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106.[8] The Second Circuit has "interpreted [the doctrine of completeness] to require that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a 'fair and impartial understanding' of the admitted portion." *Marin*, 669 F.2d at 85 (quoting *United States v. Capaldo*, 402 F.2d 821, 824 (2d Cir. 1968) (collecting cases)). This is true "even though a

---

[8] The doctrine of completeness also applies to oral statements. *United States v. Johnson*, 507 F.3d 793, 796 n.2 (2d Cir. 2007).

statement may be hearsay." *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012); *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009). The doctrine of completeness "does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Kopp*, 562 F.3d at 144.

The doctrine of completeness applies to a defendant's exculpatory statements where "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence." *United States v. Harper*, No. 05-CR-6068L, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009). To that end, the Second Circuit has excluded exculpatory statements that do not specifically explain the admitted statements. *See United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming district court's decision to exclude portion of the defendant's statement where admitted portion did not distort the meaning of the full statement); *United States v. Johnson*, 507 F.3d 793, 796 (2d. Cir 2007) (affirming district court's decision to exclude portions of confession that did not explain the admitted portion or place the admitted portion in context, noting that while "[t]he admitted portion of the confession related to . . . plans to *execute* the robbery, . . . the redacted portion related to the *execution* of the robbery").

The Court cannot anticipate whether the government's witnesses will introduce partial statements by Defendant that require the remaining statements to be introduced to prevent distortion. Accordingly, the Court reserves decision as to whether the listed statements, or any other exculpatory statements by Defendant, are admissible under the doctrine of completeness. The Court notes, however, that to the extent the government is seeking to introduce statements made by Defendant to law enforcement admitting his involvement in, or knowledge of, drug trafficking, Defendant's statements to law enforcement during the same interview denying any knowledge and involvement in drug trafficking are admissible.

### c. 404(b) evidence

The government seeks to admit Defendant's prior uncharged criminal acts, certain evidence which the government believes demonstrates Defendant's "familiarity" with drugs, and Defendant's prior arrests, indictment and conviction.  (Docket Entry No. 38.)

### i. Defendant's uncharged criminal activity is admissible

The government seeks to introduce evidence regarding Defendant's "narcotics trafficking" from December 2012, prior to the charged crime through Defendant's statements, the statements of co-conspirators and business records.  (*Id*. at 2–3.)  Defendant does not object to this evidence "in principle," but argues that if the government introduces these statements, Defendant should be allowed to introduce his other statements to provide context and prevent distortion, pursuant to the doctrine of completeness.  (Docket Entry No. 43.)  As the parties do not dispute the admissibility of Defendant's purported narcotics trafficking from December 2012 up to the charged time period, this portion of the government's request is denied as moot.[9]  Defendant's argument about the admission of his other statements is discussed above.

### ii. Evidence of Defendant's familiarity with illegal drugs

The government seeks to introduce the following evidence at trial to show Defendant's familiarity with illegal drugs:

> (1)  [P]hotographs of what appears to be marijuana from [D]efendant's phone and email . . .;

---

[9] Indeed, this evidence is not 404(b) evidence.  It is well-established that "[w]here, as here, the indictment contains a conspiracy charge, 'uncharged acts may be admissible as direct evidence of the conspiracy itself.'"  *United States v. Miller*, 116 F.3d 641, 482 (2d Cir. 1997) (citing *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)).

> (2)     a recording in which [D]efendant's girlfriend refers to [D]efendant's dealer;[10]
>
> (3)     an email showing that [D]efendant uses the term sourdiesel, a strain of marijuana, as a password . . . ; and
>
> (4)     an email showing that [D]efendant purchased two hats with "Cocaine and Caviar" written on them . . . ."

(Docket Entry No. 38 at 3–5.) The government argues that this evidence is relevant to Defendant's knowledge that he was trafficking an illegal drug because it shows his familiarity with illegal drugs. (*Id*. at 5.) The government contends that because it seeks to introduce this evidence for a non-propensity purpose, it is admissible under Rule 404(b). (*Id*. at 6.)

Defendant objects to the introduction of this evidence, arguing that it is prejudicial and irrelevant. (Docket Entry No. 43 at 3–5.) First, Defendant argues that the photographs depicting what appears to be marijuana, and the "sourdiesel" reference do not relate to XLR11 or the trafficking of XLR11 and do not demonstrate that Defendant has ever used marijuana; thus they are irrelevant to the conduct at issue. (*Id*. at 4.) Defendant also argues that the "Cocaine and Caviar" hats refer to a "widely available line of designer urban-themed clothing" by the name Cocaine and Caviar, and thus have no bearing on the issues in this case. (*Id*.)

---

[10] With respect to the recorded telephone call between Defendant and his girlfriend, the disputed issue appears to be whether this evidence is hearsay. Defendant argues that his girlfriend's statement was made in the context of a domestic dispute where he was told repeatedly not to talk. (Docket Entry No. 43 at 4–5.) Therefore, his silence should not be read as an adoption of her statement. (*Id*.) However, the telephone call is not hearsay if offered to show the effect on Defendant. *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Moreover, the telephone call may be admitted as an adoptive admission by silence. "[A]n admission by silence is admissible if 'there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not." *United States v. Aponte*, 31 F.3d 86, 87 (2d. Cir. 1994). It is more probable than not that Defendant would have responded to his girlfriend's remark that he had a "dealer" with a denial if the statement were untrue; accordingly, the government may introduce his silence as an adoptive admission. *Id.*

Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character, in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible, evidence of prior bad acts must be "(1) offered for a proper purpose, (2) relevant . . . (3) substantially more probative than prejudicial [and] (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." *United States v. Downing*, 297 F.3d 52, 58 (2d. Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)). The Second Circuit follows "an inclusionary approach" to Rule 404(b) admissibility, "under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character." *United States v. Pascarella*, 84 F.3d 61, 69 (2d. Cir. 1996). "Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *Id*.

However, just because a defendant contests an issue, such as knowledge or intent, it "does not open the door for the government and give it *carte blanche* to introduce any prior act of defendant that falls into the same crime category." *United States v. Edwards*, 342 F.3d 168, 177 (2d. Cir. 2003). "Rather, some similarity or tangible connection between the acts must be identified, something that makes the prior act relevant to proving the contested fact." *Id*. "If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent." *United States v. Garcia*, 291 F.3d 127, 137 (2d. Cir. 2002). "[E]vidence of another act should not be admitted to

show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *United States v. Gordon*, 987 F.2d 902, 908 (2d. Cir. 1993). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged . . . . There is no necessity for synonymity but there must be substantial relevancy." *Id*. (citing *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir. 1973)).

To determine whether evidence should be admitted as 404(b) evidence, courts engage in a fact-intensive inquiry into the relevance of the prior act to the disputed fact. *Compare Garcia*, 291 F.3d at 138 (finding erroneous the admission of the defendant's prior drug conviction where prior conviction was not "meaningfully probative" of defendant's knowledge of coded discussion and the "only similarity between the two drug transactions . . . is that both involved cocaine"), *and Gordon*, 987 F.2d at 909 (abuse of discretion for district court to admit evidence of defendant's possession of crack a year earlier to show that he knew the person he was meeting in New York was carrying a large quantity of cocaine and marijuana), *and United States v. Afjehei*, 869 F.2d 670, 674 (2d. Cir. 1989) (finding abuse of discretion where district court allowed evidence of prior international trips to show that defendant knew he was trafficking heroin), *with United States v. Paulino*, 445 F.3d 211, 221–22 (2d. Cir. 2006) (affirming decision to allow evidence of prior crack conviction to show that defendant had constructive knowledge of cocaine found in his closet), *and United States v. Aminy*, 15 F.3d 258, 259–260 (2d Cir. 1994) (no abuse of discretion for trial court to admit evidence that the defendant was arrested with a packet containing .334 grams of heroin a year before crime at issue, to show defendant's knowledge and intent with respect to charge of conspiracy to import heroin, particularly where

expert testimony indicated that the packet of heroin was packaged in a manner more consistent with a dealer's sample than with personal use).

Since Defendant disputes the knowledge element of the crimes charged, the government is permitted to introduce relevant "other acts" evidence under Rule 404(b). The Court must consider whether the proffered evidence is relevant, and if so, whether the evidence is substantially more probative than prejudicial. *See United States v. Scott*, 677 F.3d 72, 79 (2d. Cir. 2012) (discussing the four-factor test including whether the "other acts" evidence is "relevant to a material issue in dispute" and whether "its probative value is substantially outweighed by its prejudicial effect"). Applying this standard, the Court finds that the photographs, the "sourdiesel" reference, and the email indicating that Defendant purchased hats displaying the words "Cocaine and Caviar" are inadmissible under Rule 404(b). The government has failed to show how this evidence is "sufficiently similar to the conduct at issue to permit the jury to draw" the necessary knowledge inference for the crimes charged. *See Gordon*, 987 F.2d at 908–09 ("[I]t is an abuse of discretion for the trial court to admit other-act evidence 'if the other act or acts are not sufficiently similar to the conduct at issue.'" (citing *Affehei*, 869 F.2d at 674)). To offer this evidence, there must be a "close parallel between the crime charged and the acts shown." *Id.* at 908.

For example, in *Gordon*, the defendant was charged with importing cocaine and argued that he did not know that the individual he was with was importing narcotics. *Id*. at 909. The district court allowed evidence of the defendant's prior possession of crack cocaine stating that the evidence was relevant to show Defendant's knowledge. *Id*. at 906. On appeal, the Second Circuit found that it was an abuse of discretion for the district court to admit this evidence. The Second Circuit stated that the defendant's earlier crack possession "did virtually nothing to prove

that [the defendant] knew [his alleged co-conspirator] was importing narcotics." *Id*. at 909. The Second Circuit made specific note of the following: that the earlier possession did not involve the co-conspirator; that while cocaine was involved in both acts, they were not similar amounts of cocaine; and that there was no indication that the prior possession charge "resulted either from [the defendant's] own importation activities or from importation activities of which he had knowledge." *Id*. Accordingly, the Second Circuit concluded that the evidence of the defendant's prior possession was inadmissible under Rule 404(b) and that in any event, the probative value of the evidence was outweighed by the potential for prejudice. *Id.*

Here, the government has not sufficiently explained the similarity between these other acts and the charged conduct or how this evidence tends to prove that Defendant had knowledge that he was involved in the importation of a controlled substance.

### iii. Defendant's 2011 arrest and conviction are not admissible as 404(b) evidence but can be used to cross-examine and/or impeach Defendant

The government seeks to introduce evidence of Defendant's 2011 prior arrest and conviction for driving while impaired under Rule 404(b) of the Federal Rules of Evidence. (Docket Entry No. 38 at 6.) The government argues that Defendant's use of a false name during his 2011 arrest and conviction is admissible under Rule 404(b) because "it establishes [D]efendant's *modus operandi* and common scheme or plan." (*Id*.) The government further argues that Defendant's "prior use of a false identity during criminal activity is closely related to [D]efendant's use of a false identity during his narcotics trafficking."[11] (*Id*.) The government also seeks to admit the evidence on the basis that the "evidence also corroborates the

---

[11] The government states that it "intends to argue that the [D]efendant uses false names in an attempt to cover up his illegal activity — as evidenced by his use of the name 'Anup Shah' during the charged drug trafficking scheme and his use of the name 'Baljinder Singh' throughout the entire driving while impaired prosecution." (Docket Entry No. 38 at 6.)

government's theory that the defendant used the false name Anup Shah to cover up illegal activity, rather than for another purpose." (*Id.*) In addition, the government seeks to impeach Defendant's credibility with Defendant's 2011 driving while impaired conviction pursuant to Rule 609(a)(1)(B) and to cross-examine Defendant about his 2011 arrest pursuant to Rule 608(b) of the Federal Rules of Evidence.

Defendant argues that this evidence should be excluded because it is irrelevant. (Docket Entry No. 43 at 5–6.) Defendant argues that because he does not dispute that he used false identification in this case, his 2011 arrest and conviction "add little to the case." (*Id.* at 6.) Defendant also claims that since there is "no shared commonality" between the prior conviction and the current case, "the prior conviction adds nothing to the government's case-in-chief except as prohibited character evidence." (*Id.*)

In determining whether to admit evidence of prior crimes under Rule 404(b), the Court employs the standard outlined above in Part II.c.ii. Evidence of prior convictions may be admissible under Federal Rule of Evidence 404(b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but not to show character or propensity. Fed. R. Evid. 404(b). The Second Circuit has instructed that "evidence of prior convictions merits particularly searching, conscientious scrutiny" when determining whether the "probative value of the prior crimes is substantially outweighed by the danger of unfair prejudice." *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009). This is so because such evidence "easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of evidence." *Id.* Under Rule 609(a)(1)(B), evidence of a defendant's criminal conviction for a "crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year" is admissible for

impeachment purposes "if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). Under Rule 608(b), the Court may allow on cross-examination extrinsic evidence that is probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b).

The government argues that Defendant's 2011 arrest and conviction should be admitted pursuant to Rule 404(b) because it demonstrates his *modus operandi* of using false identities to commit crimes. Evidence of prior acts may be admissible to demonstrate *modus operandi*, *United States v. Carlton*, 534 F.3d 97, 101–02 (2d Cir. 2008), but such evidence must "share enough characteristics with the charged offenses that they share the 'signature' required for use in establishing a modus operandi under Rule 404(b)," *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (citing *United States v. Danzey,* 594 F.2d 905, 911 (2d Cir. 1979)); *see also United States v. Pena*, 978 F. Supp. 2d 254, 260 (S.D.N.Y. 2013) ("When offered to prove identity through modus operandi, the prior acts must share an unusual characteristic or signature with the charged offenses." (internal quotation marks and citations omitted)). Courts impose a similarity requirement in assessing whether the prior acts demonstrate the *modus operandi* argued by the government. "The similarity sufficient to admit evidence of past acts to establish a recurring *modus operandi* need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Silker*, 751 F.2d 477, 487 (2d Cir. 1984). "[E]ven where intent is not in issue, Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' *i.e.*, a *modus operandi* where the crimes are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 404[16], at 404–127 (1985)).

Here, Defendant's use of a false name during his prosecution for driving under the influence is not a unique or uncharacteristic act that would make it a "signature" or make it "sufficiently idiosyncratic" to establish a *modus operandi*. *See Reese*, 933 F. Supp. 2d at 583 (where three of the defendant's prior convictions shared some similarities with the charged conduct, including the fact that they involved the defendant "assuming identities" to facilitate the transfer of money to accounts he controlled, the court found that there were sufficient differences between the prior wire fraud conspiracy, access device fraud and possession of stolen security convictions and the bank fraud and conspiracy to commit wire fraud indictment); *United States v. Anglin*, No. 98-CR-147, 1998 WL 252078, at *2 (S.D.N.Y. May 19, 1998) (finding that despite many similarities between two bank robberies including "the same type of location was chosen for both robberies . . . [and] robbery of such locations is a relatively rare occurrence in the New York Metropolitan area, . . . . the method of each robbery was not sufficiently idiosyncratic to mark it as [defendant's] modus operandi or to distinguish it from the methods used in thousands of other robberies committed each year").

Nor is there any similarity between the crimes of conviction; a conviction for driving under the influence is in no way similar to the charged crime of drug trafficking. *See United States v. Tubol*, 191 F.3d 88, 95–96 (2d Cir. 1999) (finding no similarity of conduct where during the commission of a bank robbery defendant gave the teller a note claiming to have a bomb but had a hoax bomb, when compared to the charged crime where defendant claimed that someone paid him to plant a bomb in a residence in Israel). Notably, in the case cited by the government, there was substantial similarity between the prior act and the charged conduct. *See Carlton*, 534 F.3d at 102 (finding that the defendant's prior bank robberies demonstrated a pattern consistent with the charged bank robbery and noting that "any of the similarities between

the prior bank robberies and the charged crime — such as location, the takeover style of the robberies, or use of a getaway car — when viewed in isolation *may not have established a modus operandi* [but] taken together they establish the existence of a pattern") (emphasis added).

Moreover, although the government has stated that it is seeking to introduce this evidence to establish Defendant's "*modus operandi* and common scheme and plan," (Docket Entry No. 38 at 6), the government has not offered any evidence to show that Defendant's conduct in using a false name during his prosecution for the prior crime of driving under the influence is part of a common scheme or plan. *See United States v. O'Connor*, 580 F.2d 38, 41–43 (2d Cir. 1978) (discussing that a common scheme or plan includes "other crimes evidence demonstrating a connected or inseparable transaction" as well as "similar act testimony constituting a continuing scheme or conspiracy").

The government also argues that this evidence is admissible to "corroborate crucial prosecution testimony." (Docket Entry No. 38 at 6 (citing *Scott*, 677 F.3d at 81).) In *Scott*, the Second Circuit stated that it has "consistently held [other act evidence] admissible to corroborate crucial prosecution testimony." *Scott*, 677 F.3d at 81. However, the Second Circuit explained that, "this allowance for corroboration is not unlimited . . . . [it requires] the proponent of the evidence to demonstrate a close relationship between the proferred evidence and the evidence to be corroborated." *Id*. In *Scott*, the Second Circuit considered whether recognition testimony by police officers was properly admitted to corroborate the prosecution's testimony. In rejecting the government's argument, the Second Circuit noted that there was no disputed fact that the recognition testimony could have corroborated and that even it were "acceptable to introduce other act evidence to 'corroborate . . . overall testimony' . . . there [was] no such corroboration . . . except to the impermissible extent it suggests that, since [the defendant] had been up to no good

before, the detectives were right to think that he was up to no good again." *Id.* Similarly, here, Defendant's use of a false identification is not in dispute, nor is Defendant's identity, and it appears that the only purpose Defendant's prior use of false identification would serve is to show propensity. Accordingly, Defendant's 2011 arrest and conviction are not admissible to corroborate the government's case or under Rule 404(b) to show *modus operandi*, common scheme or plan.

To the extent the government seeks to cross-examine Defendant on his use of aliases and/or false identification documents, such inquiry is a proper basis for cross-examination. "The use of an alias goes to credibility and truthfulness" and is thus a proper subject of cross-examination under Rule 608 of the Federal Rules of Evidence. *Hernandez v. Kelly*, No. 09-CV-1576, 2011 WL 2117611, at *4 (E.D.N.Y. May 27, 2011); *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (questioning about aliases allowed under Rule 608(b) as long as questioning did not elicit "the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases"). Similarly, under Rule 609, the government can use Defendant's 2011 arrest and conviction to impeach him because of its probative value, which is not unduly prejudicial. *Crenshaw v. Herbert*, 409 F. App'x 428, 432 (2d. Cir. 2011) ("[U]nder Rule 609(a)(1), evidence that a witness . . . has been convicted of a [felony] shall be admitted, unless its probative value is substantially outweighed by the danger of unfair prejudice.").

### iv. Defendant can be cross-examined about his 2012 arrest and 2014 indictment

The government also seeks to cross-examine Defendant about his 2012 arrest for forgery, criminal possession of stolen property and false personation, and his 2014 indictment for perjury. (Docket Entry No. 38 at 6–7.) The government argues that Defendant can be cross-examined

about this information under Rule 608(b) of the Federal Rules of Evidence because Defendant's 2012 arrest and 2014 indictment are probative of Defendant's character for truthfulness. (*Id*. at 7.) Defendant argues that the government's request is "largely premature" as it is not clear whether Defendant will testify at trial. (Docket Entry No. 43 at 6.) Defendant also argues that "the government has not identified what conduct it wishes to cross-examine on and how it relates to [Defendant's] character for truthfulness." (*Id*.) Defendant contends that the government's request "to reveal" Defendant's 2014 indictment should be denied because it would make one of Defendant's counsel a fact witness. (*Id*.)

Defendant's 2012 arrest and 2014 indictment may be used to cross-examine Defendant. Such conduct is probative of Defendant's character for truthfulness or untruthfulness under Rule 608(b). *United States v. Brown*, No. 07-CR-874, 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) (stating that the Court should only admit evidence of prior conduct under Rule 608 that is probative of truthfulness and noting "[a]ssaults and murders do not directly reveal truthfulness in the way that forgery, perjury or fraud would"); *Patsy's Italian Rest., Inc*. *v. Banas*, No. 06-CV-0729, 2008 WL 795341, at *2 (E.D.N.Y. Mar. 24, 2008) (allowing limited questioning regarding prior contempt order against witness for perjury); *Williams v. Shaner*, No. 96-CV-2002, 2002 WL 1285119, at *2 (S.D.N.Y. June 6, 2002) (allowing the defendants to cross-examine the plaintiff regarding his "alleged attempts to suborn perjury"). Moreover, prior arrests may be "inquired into if they are probative of the witness' character for truthfulness." *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 403 (E.D.N.Y. 2013) (quoting *Johnson v. Baker*, No. 08-CV-38, 2009 WL 3486006, at *5 (W.D. Ky. Oct. 26, 2009)). Accordingly, Defendant can be cross-examined about his 2012 arrest and 2014 indictment under Rule 608(b).

### III. Government's review of emails between Defendant and counsel

Defendant seeks an order from the Court directing the government not to read email communications between him and his counsel. (Docket Entry No. 34 at 1.) Defendant concedes that his emails to counsel via the Bureau of Prison's email system are not privileged. (*Id.* at 2.) Defendant argues, however, that the government's decision to read communications between him and his client "frustrates his right to access to counsel." (*Id.* at 2.) Counsel for Defendant argues that email communication allows him to meet his ethical obligations under the American Bar Association's Model Rule 1.4 requiring him to, among other things, explain matters to his client so that his client can make informed decisions. (*Id.*) Counsel further argues that "the use of the [Trust Fund Limited Inmate Computer System ("TRULINCS")] TRULINCS system for the attorney-client relationship are nearly limitless. It is tremendously efficient and allows busy public defenders to tend to all of their clients . . . ." (*Id.* at 3.) The government opposes Defendant's motion and argues that the email communication is not privileged, that Defendant has no Sixth Amendment right to email communication with counsel, and that forcing the government to identify attorney-client communication imposes an undue administrative burden on the government. (Docket Entry No. 44 at 1.)

The Federal Bureau of Prisons, within its discretion, provides email access to inmates through TRULINCS. *See Dunlea v. Fed. Bureau of Prisons*, No. 10-CV-214, 2010 WL 1727838, at *1 (D. Conn. Apr. 26, 2010) ("TRULINCS, however, is a privilege and the BOP has absolute discretion in determining whether to limit or deny the use of TRULINCS by an inmate."), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010). Inmates and their contacts have to obtain approval by BOP for the use of TRULINCS and "must consent to monitoring prior to using the system." *See* Federal Bureau of

Prisons, *E-mail*, (July 22, 2014, 3:32 PM), *http://www.bop.gov/inmates/communications.jsp*.

Thus, all users of TRULINCS are aware that their communications are monitored by the BOP.

Counsel argues that while other methods of communication are available, they are burdensome and time-consuming compared to the use of email communication. (Docket Entry No. 57 at 2–3.) Counsel also argues that BOP "places an unreasonable burden" on pre-trial defendants when they "preclude using that technology to facilitate confidential communication with their attorneys." (*Id.* at 4.) Counsel further argues that the government should "seek a technological solution" to separate the emails between defendants and their counsel and offers the following technological solution to BOP: assign "each inmate two e-mail addresses, one to be used for attorney-client communications, and another for all other communication." (*Id.* at 4–5.)

Although the Court understands and appreciates Defendant's desire to have quick and easy access to his counsel by email, as Defendant and counsel admit, the TRULINCS system does not provide for the communication of privileged information. *See United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (finding that because the defendant was aware that his phone calls were being monitored by BOP, his decision to communicate telephonically constituted a waiver of privilege and noting that "[c]ourts that have been faced with the question have similarly decided that, where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege"). Defendant has many secure ways to communicate with counsel, including unmonitored telephone calls, mail and in person visits, and although they may be burdensome, they do provide Defendant with access to his counsel. While the Court may not agree with the position of the United States Attorney's Office to review non-privileged email communications between inmates and their attorneys communicated over a monitored system,

the Court has no legal basis to find that the fundamental right of access to effective assistance of counsel established in *Gideon v. Wainwright*, 372 U.S. 335 (1963), is compromised by the review of communication that both Defendant and his counsel knew to be monitored and thus not privileged. Even though they may be more burdensome than email, the aforementioned methods of communication between Defendant and counsel remain available and unfettered. *See Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *6 (S.D.N.Y. Mar. 11, 2014) (recognizing that "district courts have found that a prisoner's right to counsel is not unreasonably burdened where a plaintiff has alternate means of communication with counsel" (collecting cases)). The Court has no legal basis to prohibit the review of these emails. Defendant's motion to prevent the government from reviewing his non-privileged communication with counsel is denied.[12]

## IV. Experts

Defendant moves to exclude the testimony of each of the government's three proposed experts, or in the alternative, requests that the Court hold a hearing to determine the admissibility of the expert testimony. (Docket Entry No. 45.) The government opposes the motion and urges the Court to deny it without a hearing. (Docket Entry No. 53.) The government also moves pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure to obtain sufficient notice of Defendant's proffered expert's testimony.

"[E]xpert testimony is admissible if the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact or issue." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 n.12 (2d Cir. 2013) (quoting *Daubert v.*

---

[12] Counsel's recommended technological solution appears to be reasonable. However, BOP is not a party in the litigation before the Court and is the appropriate party to whom this solution should be recommended.

*Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579, 592 (1993)), *cert. denied*, --- U.S. ---, 134 S.

Ct. 1938 (2014). "This entails a preliminary assessment of whether the reasoning or

methodology underlying the testimony is scientifically valid and of whether that reasoning or

methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at

592–93); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending *Daubert* to

non-scientific testimony). Specifically, Rule 702 of the Federal Rules of Evidence, which

governs the admission of expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011). The inquiry is "a

flexible one," and courts "enjoy considerable discretion in deciding on the admissibility of expert

testimony." *Farhane*, 634 F.3d at 158 (citing *Daubert*, 509 U.S. at 594 and *Kumho Tire Co.*, 526

U.S. at 152).

### a. Chemists

In a Rule 16 disclosure, the government proffered Lisa McFarland and Brian Hall as

experts. Defendant does not appear to argue that McFarland or Hall are unqualified to be

considered experts but instead argues that the tests conducted by the government's proffered

chemists are unreliable or their reliability is unclear given the lack of Rule 16 disclosures.

### i. McFarland

McFarland is a Customs and Border Patrol ("CBP") forensic chemist who conducted a forensic analysis of the substance found in an envelope seized by CBP on March 8, 2014.[13] (Docket Entry No. 31.) The government's letter states that in a CBP laboratory report produced on May 5, 2014, bearing Bates number TW00078, McFarland concluded that the substance found consisted of 4,004.2 grams of XLR11. (*Id.*) The CBP laboratory report was produced to Defendant on May 5, 2013, but a copy of the report was not filed with the Court. (*See* Docket Entry No. 10.) On July 16, 2014, the government disclosed additional discovery, including graphs and worksheets generated by McFarland. (*See* Docket Entry No. 40.) However, these documents were also not filed with the Court. On July 21, 2014, in its opposition to Defendant's motion, the government provided additional information concerning McFarland, principally, that her testing involved chromatography/mass spectrometry and Fourier transform infrared spectroscopy. (Docket Entry No. 53 at 11.)

Defendant contends that the information provided thus far is insufficient to adequately prepare for trial or to challenge McFarland's conclusions. (Docket Entry No. 45 at 6.) Defendant has also submitted an affidavit from Heather L. Harris, a forensic chemistry consultant, in which Harris states that it is impossible to evaluate the validity and reliability of the lab results with the documentation thus far provided (not including July 16, 2014 disclosures). (Harris Aff. annexed to Docket Entry No. 45 as Ex. C.) Defendant's contentions as to McFarland's underlying analysis seem to concern the validity of the specific lab results rather than her qualifications to testify as an expert. However, the government has failed to provide the

---

[13] McFarland has previously been qualified as an expert in a federal court in Syracuse, New York. (Docket Entry No. 31.) The government produced a copy of McFarland's resume to Defendant but that resume was not filed with the Court. (*Id.*)

Court with any information regarding the scientific basis for McFarland's testimony, and any documentation with respect to McFarland's qualifications, speaking to her education, experience and training.  Absent said evidence, the Court may need to hold a *Daubert* hearing in order to properly execute its gatekeeping function.  *See United States v. Barnes*, 411 F. App'x 365, 370 (2d Cir. 2011) ("When a district court conducts 'an extensive consideration of the expert's credentials and methods,' *United States v. Williams*, 506 F.3d 151, 162 (2d Cir. 2007), and 'consider[s] the use of ballistic expert testimony in other cases,' *id.* at 161, the court has 'effectively fulfilled its gatekeeping function under *Daubert*' and the 'formality of a separate hearing [i]s not required,' *id.*" (alterations in original)); *Williams*, 506 F.3d at 162 ("Because the district court's inquiry here did not stop when the separate hearing was denied, but went on with an extensive consideration of the expert's credentials and methods, the jury could, if it chose to do so, rely on her testimony which was relevant to the issues in the case.").  The government is ordered to submit the appropriate documentation to the Court by Friday August 1, 2014.

### ii.  Hall

Hall is a Drug Enforcement Agency ("DEA") forensic chemist who conducted a forensic analysis of the substances found in envelopes seized by the CBP.  (Docket Entry No. 31.)  The government has specified that Hall will testify about a total of nine lab reports he prepared in connection with envelopes seized and detained by CBP on March 8, 2014, and March 11, 2014.  (Docket Entry No. 53 at 3.)

In the DEA laboratory reports, bearing Bates numbers TW001091–TW001094, Hall concluded that the substances found consisted of a total of 15.994 kilograms of XLR11.  (*Id.* at 3.)  The DEA laboratory results reveal that the following tests were conducted: Gas Chromatography, Gas Chromatography/Mass Spectrometry, Infrared Spectroscopy, liquid

Chromatography/Mass Spectrometry.  (*See* DEA Laboratory Reports, annexed to Docket Entry No. 45 as Ex. B.)  These tests are commonly used to identify drugs, *see Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 320 (2009) (citing a source that characterized "gas chromatography/mass spectrometry analysis" as "commonly used"); *United States v. Crockett*, 586 F. Supp. 2d 877, 886 (E.D. Mich. 2008) ("Gas chromatography and infrared spectrometry have long been recognized as valid technological methods for determining the composition of physical substances.").  Defendant argues however, that the results consist of nothing more than "conclusory statements" without any explanation of the basis of the conclusions or the methodologies used.  (Docket Entry No. 45 at 3.)  Assuming that Hall will testify to the fact that these common methodologies were executed normally in this case, there is little doubt that *Daubert* is satisfied.  However, the government has not presented any documentation attesting to the fact that Hall applied the aforementioned tests reliably in this particular case.  *See Atl. Specialty Ins. Co. v. Gold Coast Developments, Inc.*, No. 05-CV-4863, 2008 WL 974411, at *4 n.2 (E.D.N.Y. Apr. 8, 2008) (finding a hearing unnecessary where the "*Daubert* issues could be decided based on the written record, which included reports, depositions, and an affidavit").

The government also represents that Hall has been qualified as an expert sixteen times and has testified as an expert in this district, but failed to provide the Court with any documentation relating to Hall's experience and qualifications.  (Docket Entry No. 31 at 2.)  The government is ordered to submit the appropriate documentation to the Court by Friday August 1, 2014.

### b.  Special Agent Justin Duralia

Special Agent Duralia has been employed by the DEA for nearly fourteen years, has received specialized training in the identification of narcotics and drug trafficking and has

participated in hundreds of drug trafficking investigations. (Docket Entry No. 31 at 2.) The government expects Duralia to explain that the quantity of narcotics at issue is consistent with distribution rather than personal use and testify about the nature of synthetic drugs, the transportation of XLR11 across international lines, domestic distribution and wholesale pricing. (*Id.*) Defendant argues that Duralia's qualifications to opine on novel synthetic drugs is "highly suspect" because he has not received specialized training in synthetic drugs and it is unclear how many synthetic drug investigations Duralia has conducted. (Docket Entry No. 45.)

"[F]ederal courts routinely allow law enforcement officials with specialized knowledge in narcotics trafficking to offer expert testimony . . . ." *United States v. Vertil*, --- F. App'x ---, --- 2014 WL 1924462, at *2 (2d Cir. May 15, 2014); *see also United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008) (noting that "law enforcement officers may be equipped by experience and training to speak to the operation, symbols, jargon, and internal structure of criminal organizations").

Here, the government contends that Duralia has special expertise in synthetic cannabinoids as he has spent the majority of the last two and a half years investigating synthetic cannabinoids. (Docket Entry No. 53 at 15.) In addition to his investigations, Duralia will base his testimony on discussions with other special agents and cooperating defendants. (*Id.* at 16.) The government has failed to support any of these assertions with documentation. The government is ordered to submit the appropriate documentation to the Court by Friday August 1, 2014.

### c. James Felman, Esq.

Defendant has disclosed that he intends to offer James Felman, Esq., as an expert witness. (Docket Entry No. 35.) The government moves, pursuant to Rule 16(b)(1)(C) of the Federal

Rules of Criminal Procedure, to compel Defendant to provide sufficient notice of his proffered expert testimony. (Docket Entry No. 42.) The government argues that Defendant's disclosures so far fail to satisfy Rule 16 and raise a concern that Felman could testify based on past-client confidences. (*Id.*) Defendant states that Felman will testify as to the nature of synthetic drugs and the distribution of synthetic drugs. (Docket Entry No. 35 at 1.) Defendant contends Felman's "intellectual rigor should not be questioned" and that he will not testify about information protected by attorney-client privilege. (Docket Entry No. 56 at 1–2.) Defendant argues that Felman is an expert based on his involvement in lead XLR11 cases, his study of all publicly available material on XLR11 and his discussions of the pharmacology and chemistry of synthetic cannabinoids with more than a dozen chemists. (*Id.*) Defendant has not submitted any documentation to support these allegations to the Court. Defendant is ordered to submit the appropriate documentation to the Court by Friday, August 1, 2014.

## V. Identifications

### a. Discovery

Defendant states that beginning on Friday July 11, 2013, the government provided notice of three different identification procedures that the government plans to use in its case-in-chief. (Docket Entry No. 45 at 11.) Defendant requests that the Court compel the government to immediately disclose all discovery relating to all identification procedures. (*Id.*) Of particular concern to Defendant is the fact that two of the additional identifications took place before the suppression hearing held by the Court, yet these identifications were not mentioned by the government during the suppression hearing. (*Id.*) The government responds that Defendant is not entitled to identification procedure information for individuals who the government does not intend to call at trial. (Docket Entry No. 53 at 16.) This application is denied as moot as the

Court ordered the government to provide this information to Defendant during the July 23, 2014 telephone conference.

### b. Suppression

Defendant moves the Court to suppress the following: (1) two identifications made on June 2, 2014 and (2) an identification made on July 16, 2014.[14] (Docket Entry No. 45 at 13.) The government argues that all identifications are admissible. (Docket Entry No. 53.)

### i. June 2, 2014 identifications

On June 2, 2014 a UPS employee ("UPS Employee 1") identified Defendant as "Josh," who shipped packages at the UPS store from February to August 2013.[15] (Docket Entry No. 53 at 3.) UPS Employee 1 saw "Josh" on multiple occasions at close proximity during conversations with him at the store. (*Id.*) Special Agent Hardin showed a single photograph of Defendant to UPS Employee 1, and UPS Employee 1 identified the individual depicted in the photograph as "Josh" "without hesitation." (*Id.*)

Also on June 2, 2014, Special Agent Hardin confirmed that a Benares Restaurant employee ("Benares Employee") worked with Defendant for six to seven months prior to Defendant's arrest. (*Id.* at 3–4.) Hardin showed a single photograph of the Defendant to the witness and the witness identified the individual depicted in the photograph "without hesitation." (*Id.* at 4.)

---

[14] There appears to be some confusion as to whether this last identification occurred on July 14, 2014 or July 16, 2014. *Compare* Docket Entry No. 45 at 13 (referring to July 14, 2014), *with* Docket Entry No. 53 at 4 (referring to July 16, 2014). The Court will refer to this identification as occurring on July 16, 2014.

[15] These facts are taken from the government's memorandum dated July 21, 2014. (Docket Entry No. 53.)

"The Second Circuit has 'consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one.'" *United States v. Thomas*, 981 F. Supp. 2d 229, 234 (S.D.N.Y. 2013) (quoting *Mysholowsky v. New York*, 535 F.2d 194, 197 (2d Cir. 1976)). Here, because the government has not offered any justification based on extenuating circumstances for the single-photograph identifications, they are considered unduly suggestive. Nevertheless, the identifications may be found independently reliable. *See United States v. Walia*, No. 14-CR-213, 2014 WL 2533848, at *3 (E.D.N.Y. June 5, 2014) (discussing the factors involved in a reliability assessment such as accuracy of the description, certainty demonstrated by witness and length of time between the identification and the crime). The government argues that these identifications are reliable as both witnesses identified Defendant without hesitation, had seen the Defendant multiple times and the identifications were made less than a year after last seeing Defendant. (Docket Entry No. 53 at 19.) Although these facts may make the identifications reliable, the Court cannot make such a determination without any evidence supporting the allegations. If the government offers these witnesses at trial the Court will conduct a suppression hearing at that time.

### ii. July 16, 2014 identification

On July 16, 2014, a second UPS employee ("UPS Employee 2") selected Defendant's picture from a photographic array and identified the photograph of Defendant as "Josh." (Docket Entry No. 53 at 4.) UPS Employee 2 made the identification while alone in a break room of the UPS store. (*Id.*) The photographic array had written instructions, which state that the photographic array does not necessarily include a photograph of anyone known to the witness. (*Id.*) Hardin made no comments with respect to any particular photograph. (*Id.*)

The government contends that the photographic array used on July 16, 2014, is "nearly identical" to the photographic array upheld by the Court in its July 18, 2014 Memorandum and Order after a suppression hearing. (Docket Entry No. 53 at 18.) The Court has reviewed the photographic array and does not find it to be suggestive on its face but reserves ruling as to whether the identification procedure was suggestive until trial, assuming the government offers this witness at trial.

## VI. Conclusion

For the reasons discussed above, the parties' motions are granted in part and denied in part.

SO ORDERED:

_____ s/ MKB _____
MARGO K. BRODIE
United States District Judge

Dated: July 25, 2014
        Brooklyn, New York