UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA

              v.                        **MEMORANDUM & ORDER**
                                           14-CR-213 (MKB)

TUSHAR WALIA,

                        Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 26, 2014, a grand jury returned a five-count superseding indictment against Defendant Tushar Walia, charging him with conspiracy to distribute and possess with intent to distribute a controlled substance, attempted possession with intent to distribute a controlled substance, possession with intent to distribute a controlled substance, conspiracy to import a controlled substance, and importation of a controlled substance, which substance contained XLR11, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1), 963, and Title 18, United States Code Sections 2 and 3551 *et seq*. (Superseding Indictment ("S-1"), Docket Entry No. 24.) After a jury trial, on September 17, 2014, Defendant was convicted of all counts. (Minute Entry dated Sept. 17, 2014.)

Currently before the Court is Defendant's motion to challenge the determination by the United States Probation Department (the "Probation Department") that Defendant should be assigned a criminal history point for his conviction of driving while intoxicated and two criminal history points for committing the instant drug trafficking offense while under a conditional discharge sentence. (Letter re Criminal History Calculation ("Def. Mot.") 1, Docket Entry No. 139.) If the three criminal history points are properly assigned to Defendant, he will be ineligible to receive a safety-valve credit pursuant to Title 18, United States Code, section 3553(f) and the

United States Sentencing Guidelines section 5C1.2. (*Id.*) For the reasons discussed below, the Court grants Defendant's motion to correct his criminal history calculation.

I. **Background**

    a.    **Defendant's prior conviction under VTL § 1192**

In the early hours of May 5, 2011, Defendant was arrested and charged with "operating a motor vehicle while under the influence of alcohol or drugs" (the "2011 offense") in violation of New York Vehicle & Traffic Law ("VTL") § 1192. (Def. Mot. 2.) Neither party appears to dispute that, at the time of his arrest, Defendant was not driving the car, but was instead asleep with the keys in the ignition and the engine running. (Def. Mot. 2; Letter in Opp'n to Def. Mot. ("Gov't Opp'n") 2, Docket Entry No. 141.)[1] An officer of the New York City Police Department found Defendant asleep behind the wheel, woke him, and subjected him to a breathalyzer test that revealed a blood alcohol content of 0.165. (Gov't Opp'n 1.)

On September 19, 2013, Defendant appeared in Bronx Criminal Court and admitted that he violated VTL § 1192.1. (Def. Mot. 2.) Pursuant to his plea agreement, Defendant was sentenced to a one-year conditional discharge, a $500 fine, and a $225 surcharge. (*Id.*) Defendant's license was suspended for 90 days, and he was required to use an ignition interlock device in his car for six months. (*Id.*)

    b.    **Probation's calculation in the Presentence Investigation Report**

In the Presentence Investigation Report ("PSR"), the Probation Department assigned Defendant one criminal history point for the 2011 offense, subtitled "Driving While Intoxicated," but noted that Defendant was not driving but had "f[allen] asleep behind the wheel of an

---

[1] The parties agree that, under New York law, turning on the ignition of a car constitutes "operating" the vehicle within the meaning of VTL § 1192. (Def. Mot. 2; Gov't Opp'n 2 (citing *People v. Prescott*, 95 N.Y.2d 655, 662 (2001).)

2

automobile" while "the engine was running and the key was in the ignition."[2] (Def. Mot. 2. (quoting PSR ¶ 52).) The Probation Department also assigned Defendant two additional criminal history points pursuant to the United States Sentencing Guidelines ("Guidelines") § 4A1.1(d) because Defendant committed the recent drug offense while under conditional discharge for the 2011 offense.[3] (Def. Mot. 2 (citing PSR ¶ 54).) On February 9, 2016, the Probation Department issued an Addendum to the PSR (the "Addendum"), which rejected, among other things, Defendant's objections to the calculation of the criminal history points that should be assigned to him and, ultimately, his criminal history category.[4]

c.  **Defendant's objection to the calculation of his criminal history**

Defendant argues that the Probation Department assigned three criminal history points in misplaced reliance on Application Note 5 of Guidelines § 4A1.2 ("Application Note 5"), which states that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified." (Def. Mot. 2 (quoting Guidelines § 4A1.2 cmt. n.5).) Defendant contends

---

[2] During his pre-sentence interview, Defendant confirmed that he was not driving, but was asleep inside the car. (Def. Mot. 2.)

[3] Defendant notes that the Probation Department calculated his offense level as 40 and placed him in a Criminal History Category of II, which translates to an advisory Guidelines range of 324 to 405 months. If the Court were to find that Defendant has zero criminal history points, Defendant may receive a two-level reduction under the Guidelines, resulting in an advisory Guidelines range of 235 to 293 months. (*See* Def. Mot. 3 n.2.)

[4] Defendant argues that the Addendum incorrectly adopted a "categorical" approach to criminal history calculations when it stated that a defendant's criminal history calculation is "based on the conviction, not on the description of the criminal conduct." (Def. Mot. 4 n.3.) Defendant argues that the Second Circuit has explicitly stated that the court may consider "any . . . relevant factor" — including "the actual conduct involved and the actual penalty imposed" — when analyzing a prior offense to assess whether it counts towards a defendant's criminal history score. (*Id.* (quoting *United States v. DeJesus-Concepcion*, 667 F.3d 303, 304–05 (2d Cir. 2010)).)

3

that the plain text, history, case law and policy supporting and surrounding Application Note 5 demonstrate that a conviction for operating a vehicle while intoxicated should count toward a defendant's criminal history only when the conviction involves driving. (Letter in further Supp. of Correction ("Def. Reply") 1, Docket Entry No. 142.) Because Defendant was not driving, he argues that Application Note 5 should not apply to the 2011 offense and, instead, the Court must determine whether the 2011 offense constituted, or was similar to, those offenses that are sometimes counted under Guidelines § 4A1.2(c)(1) or those that are "never counted" under Guidelines § 4A1.2(c)(2). (Def. Reply 2.)

### d. The government's response to Defendant's objection

The Government argues that the 2012 Sentencing Commission amendments to Application Note 5 evinced an intent to capture a broader set of traffic infractions, including Defendant's, in criminal history calculations. (Gov't Opp'n 3.) The Government also argues that VTL § 1192.1 proscribes conduct that the New York legislature deemed to pose the same risk as driving while intoxicated.[5] (*Id.* at 5.)

## II. Discussion

Section 4A1.2(c) of the Guidelines addresses those prior sentences that (1) are always counted toward a criminal history calculation, (2) are counted subject to possible exception, and (3) are never counted. Under this section of the Guidelines, only prior felonies always count toward a criminal history calculation. Certain misdemeanor and petty offenses listed in § 4A1.2(c)(1), "and offenses similar to them, by whatever name they are known," are counted if

---

[5] Both parties agree that if Defendant does not receive the single criminal history point for his 2011 offense, "he will not also receive criminal history points for committing the instant offense while under a [criminal justice] sentence." (Def. Reply 2 n.2; Gov't Opp'n 2 n.1 (citing Guidelines § 4A1.1 cmt. n.4).)

"(A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to the instant offense."[6] Guidelines § 4A1.2(c)(1). Certain other minor offenses listed in § 4A1.2(c)(2), "and offenses similar to them, by whatever name they are known," never count toward a criminal history calculation.[7] Guidelines § 4A1.2(c)(2).

### a. The 2011 offense does not fall within Application Note 5

The first issue the Court must address is whether Defendant's operation of the vehicle, although in violation of § 1192.1,[8] falls outside of the scope of "driving" while intoxicated or under the influence as contemplated by Application Note 5, and which invariably contributes to a criminal history calculation. In examining the text, history and purpose of Application Note 5 in connection with VTL § 1192, as well as the limited case law interpreting both in conjunction, the Court finds that the 2011 offense was not the type of offense contemplated by Application Note 5.

### i. VTL § 1192

Section 1192.1 of the VTL states that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." VTL § 1192.1. Both state and federal courts in New York have recognized that to "operate" under

---

[6] Among the offenses listed in § 4A1.2(c)(1) are careless or reckless driving, disorderly conduct, driving without a license or with a revoked or suspended license, gambling and trespassing.

[7] Among the offenses listed in § 4A1.2(c)(2) are hitchhiking, minor traffic infractions ("e.g., speeding"), public intoxication, vagrancy and loitering.

[8] The title of VTL § 1192, the statute under which Defendant pled, is "Operating a motor vehicle while under the influence of alcohol or drugs." The title of § 1192.1, the sub-section under which Defendant pled, is "Driving while ability impaired" ("DWAI"). However, as discussed *infra*, the sub-section is known to include activity beyond driving.

5

§ 1192 captures a broader range of conduct than to "drive." *See, e.g., Dalton v. Ashcroft*, 257 F.3d 200, 205–06 (2d Cir. 2001) (citing state law for the proposition that "the definition of operation is broader than that of driving and that a person operates a motor vehicle within the meaning of the statute when, in the vehicle, he intentionally does any act or makes any use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle" and noting that "[a]n intention to drive is not the same as driving"); *United States v. Gonzalez-Rivera*, No. 05-CR-402, 2011 WL 4916395, at *3 n.9 (S.D.N.Y. Oct. 17, 2011) ("New York courts have held that the term 'operating' . . . is broader than the term 'driving.'"); *People v. Litto*, 8 N.Y.3d 692, 705–06 (2007) (noting that "a prosecutor must show impairment by alcohol to prove a violation of [§ 1192] subdivision 1 — resulting in a traffic infraction," and that "[s]ubdivision 1 is a lesser-included offense of subdivisions 2 and 3").[9]

Consistent with this understanding, the broader definition of "operate" has been used to reach offenders who did not "drive" while intoxicated. *See, e.g., People v. Cosimano*, 975 N.Y.S.2d 368 (App. Div. 2013) (charging the defendant with a violation of § 1192 where he was found sleeping in his car with the engine running); *Prudhomme v. Hults*, 278 N.Y.S.2d 67 (App. Div. 1967) (same); *People v. Membrino*, 695 N.Y.S.2d 865, 867 (N.Y. Crim. Ct. 1999) (same).

---

[9] In *People v Litto*, the New York Court of Appeals further stated:
> Subdivisions 2 and 2a require a showing of a specific amount of blood alcohol content to result in a per se criminal violation, whereas subdivision 3 — 'in an intoxicated condition' — allows for a circumstantial showing of inability to operate a motor vehicle while under the influence of alcohol. Confirming this scheme, subdivision 9 explicitly permits a conviction under subdivision 1, 2, or 3 even when the charge alleges a violation of either subdivision 2 or 3.

*People v. Litto*, 8 N.Y.3d 692, 705–06 (2007) (holding, before the statute was amended, that § 1192.3 does not proscribe driving while under the influence of drugs).

The New York Court of Appeals has also noted that "[i]n 1960, the Legislature added section 1192(1) to assure that not all drivers who were under the influence of alcohol would be criminally liable."[10] *Litto*, 8 N.Y.3d at 706. In fact, violations of § 1192.1 are not criminal convictions; they are infractions of a non-criminal traffic law provision.[11] *See* VTL § 155 ("A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment."); *United States v. Paredes*, --- F. Supp. 3d ---, ---, 2016 WL 2619856, at *7 (E.D.N.Y. May 6, 2016); *United States v. Gonzalez-Rivera*, No. 05-CR-402, 2011 WL 3916395, at *5 (S.D.N.Y. Oct. 17, 2011).

Defendant pled guilty to a violation of § 1192.1, which section does not require driving and is a lesser-included offense of §§ 1192.2 and 1192.3. Nothing in his arrest record or criminal complaint suggests that he was driving the vehicle in which he was sleeping. (*See* Arrest Report & Criminal Compl., annexed to Def. Mot. as Exs. 1 & 2, Docket Entry Nos. 139-1 & 139-2.)

### ii. Application Note 5

More significant than the State's intention in enacting VTL § 1192 is the Sentencing Commission's intention in passing and amending Application Note 5. *See United States v.*

---

[10] The New York Court of Appeals has also noted that it has upheld the legislative scheme of § 1192 despite its breadth because it has interpreted the legislative intent to prohibit driving while using alcohol. *See Litto*, 8 N.Y.3d at 707 ("Although subdivisions 1, 2 and 3 proscribe separable offenses based upon the degree of impairment caused by alcohol ingestion, the provisions closely overlap and are species of the generic offense of 'Operating a motor vehicle while under the influence of alcohol.'" (internal quotation marks omitted) (citation omitted)).

[11] This distinction undercuts the Government's argument that "New York has criminalized [Defendant's] conduct because the serious [sic] risk of harm it poses to other individuals whenever a person operates a car while intoxicated." (Gov't Opp'n 5.) To the contrary, New York has *not* criminalized Defendant's conduct and has distinguished it from more serious counterparts both in name and in punishment. *See Paredes*, 2016 WL 2619856, at *7; *see also* VTL § 1193.1(a) (noting that the punishment for the "traffic infraction" of § 1192.1 is a fine between $300 and $500 and imprisonment for up to fifteen days).

*Mendoza-Morales*, 347 F.3d 772, 776 (9th Cir. 2003) ("[H]ow a state characterizes its own offenses and sentences generally is not relevant to a federal sentence calculation. . . . [I]n deciding whether a prior state conviction should be counted for purposes of a federal criminal history calculation, a district court must examine federal law."); *see also United States v. Servin-Acosta*, 534 F.3d 1362, 1355 (10th Cir. 2008) ("When applying the Guidelines, we have rejected the notion that whether a state conviction was for an enumerated but undefined crime depends on how the crime is characterized under state law.").

"The starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Ret. Bd. of the Policemen's Annuity & Benefit Fd. V. Bank of N.Y. Mellon*, 775 F.3d 154, 165 (2d Cir. 2014) (quoting *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 193 (2d Cir. 2009)). The text of Application Note 5 states: "Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified." Guidelines § 4A1.2 cmt. n.5. In *United States v. Potes-Castillo*, 638 F.3d 106, 114 (2d Cir. 2011), the Second Circuit addressed a "driving while ability impaired" conviction under VTL § 1192.1, but held more broadly that Application Note 5 treated alcohol-related driving offenses like other offenses under § 4A1.2(c)(1). *Id.* ("We hold that non-felony driving while ability impaired convictions should be treated like any other misdemeanor or petty offense sentences not excluded by section 4A1.2(c)(2). Such sentences are counted . . . unless section 4A1.2(c)(1) operates to exclude the particular sentence at issue."). *Potes-Castillo* did not address *whether* Application Note 5 applies to violations of § 1192.1. It did, however, hold that *when* Application Note 5 applies,

DWAI infractions may be excluded under § 4A1.2(c). *See Potes-Castillo*, 638 F.3d at 112.[12]

In 2012, after the *Potes-Castillo* decision further highlighted the split among various circuit courts of appeal surrounding Application Note 5, the Sentencing Commission amended Application Note 5 to clarify that, "without regard to how the offense is classified," convictions for "driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted," and that "[p]aragraphs (1) and (2) of § 4A1.2(c) do not apply." Guidelines § 4A1.2 cmt. n.5.

Amendment 766 to the Guidelines (effective Nov. 1, 2012) changed Application Note 5 to its current text. The Commission explained the split among the circuits as follows:

> Convictions for driving while intoxicated and similar offenses encompass a range of offense conduct. For example, convictions for driving while intoxicated and similar offenses can be classified as anything from traffic infractions to misdemeanors and felonies, and they are subject to a broad spectrum of penalties (ranging from a fine to years in custody for habitual offenders). When the prior offense is a felony, the sentence clearly counts . . .
>
> When the prior sentence is a misdemeanor or petty offense, § 4A1.2(c) specifies that the offense is counted, but with two exceptions, limited to cases in which the prior offense is on (or similar to an offense that is on) either of two lists. . . .
>
> Most circuits have held that driving while intoxicated convictions, including misdemeanors and petty offenses, always count toward the criminal history score, without exception, even if the offense met the criteria for either of the two lists.

Guidelines Amend. 766 at 16. The Commission explained that the amendment "reflects the Commission's view that convictions for driving while intoxicated and other similar offenses are sufficiently serious to always count toward a defendant's criminal history score." *Id.*

---

[12] For this reason, Defendant argues that the Sentencing Commission's amendment to Application Note 5 is irrelevant to this case, in which Defendant is contesting the applicability of Application Note 5 to his infraction in the first instance. (*See* Def. Mot. 8; Def. Reply 5–6.)

9

From the plain language of Application Note 5, it is unclear whether the Sentencing Commission intended to address the *conduct* of driving while intoxicated or the *offense* of driving while intoxicated, assuming, perhaps, that offenses termed "driving while intoxicated" involved driving. The text of the Amendment, however, specifies "*driving*" while intoxicated or under the influence approximately ten times and cites cases that address driving-related offenses, but never uses the term "operating." Guidelines Amend. 766 at 17–19 (emphasis added). It stands to reason that the Sentencing Commission was aware that numerous states use some form of the verb "to operate" in their DWI/DWAI statutes, although not all define "operate" more broadly than they define "drive."[13]

### iii. Relevant case law

There is no Second Circuit authority to instruct the district courts on this matter, and the Court has located no other federal district or appellate case in the country that has applied Application Note 5 when a defendant was not driving.

In a recent decision, Judge Weinstein decided a case with facts similar to the instant case. *See United States v. Paredes*, --- F. Supp. 3d ---, ---, 2016 WL 2619856 (E.D.N.Y. May 6, 2016). In *Paredes*, the defendant was being sentenced for a drug crime that carried a ten-year mandatory minimum if his prior plea to a § 1192.1 violation was counted toward his criminal history calculation. *Id.* at *1. Judge Weinstein held that Application Note 5 did not apply to the case before him because the Note refers to "convictions," and the defendant's offense did not result in a criminal conviction (a fact of which the defendant likely was informed during his plea). *Id.* at *7. He also held that Application Note 5 did not apply because it only applies to convictions

---

[13] Defendant cites twenty-seven states, including New York, whose DWI/DWAI statutes include the verb "to operate." (*See* Def. Mot. 8 n.9.)

for driving, and "[the defendant's] DWAI infraction is not necessarily a 'driving' offense."[14] *Id.*

In the absence of any evidence that Application Note 5 was intended to cover non-driving conduct, and finding persuasive Judge Weinstein's reasoning that Application Note 5 was intended to cover only driving-related convictions, the Court concludes that Application Note 5 does not mechanically apply to Defendant's 2011 offense.

### b. Similarities between the 2011 offense and offenses listed in Guidelines §§ 4A1.2(c)(1) or (c)(2).

Because Application Note 5 does not mechanically apply to Defendant's 2011 traffic infraction,[15] the 2011 offense must be considered under Guidelines § 4A1.2(c) in the same

---

[14] Judge Weinstein further noted that "[t]he Commission apparently did not consider that the amended Note would encompass New York's 'ability impaired' provision, which is a light, noncriminal offense with *mens rea* squeezed out of it, as interpreted by New York courts." *United States v. Paredes*, --- F. Supp. 3d ---, ---, 2016 WL 2619856, at *6 (E.D.N.Y. May 6, 2016). The Judge also noted that:
> Were we to accept the view of the Commission, if a person were to have a few drinks, sit in the passenger seat of a car to sleep it off — for which he could not be convicted of a DWAI — and later be charged with the instant [drug] offense, the court could impose no time in prison. But if that person slid over to the driver's seat to sleep and was convicted of a DWAI (as he could be under New York law), this court would have to impose a mandatory sentence of ten years. That scenario is implausible in the real world of people and law.

*Id.* at *1. Because the Commentary "would lead to an absurd result," and because "[Guidelines] commentary is not binding in all instances," Judge Weinstein declined to count the defendant's prior traffic infraction toward his criminal history calculation. *Id.* at *2 (internal quotations and citations omitted).

[15] Defendant, but not the Government, addresses whether Defendant's 2011 offense is "similar" to "driving while intoxicated or under the influence" within the meaning of Application Note 5. If the Court determines that it is "similar," Application Note 5 still applies to Defendant's offense. Defendant argues, and case law supports, that Application Note 5's reference to "similar offenses" should be read as "other driving offenses involving some level of impairment." (Def. Mot. 10 (citing federal courts of appeals' interpretations of Application Note 5, but noting that no courts have applied Application Note 5 in a context in which the defendant had not been driving).)

manner as other petty offenses and misdemeanors.[16] *See Potes-Castillo*, 638 F.3d at 113.
Pursuant to Application Note 12, courts should use a "common sense approach" in analyzing whether an unlisted offense is similar to an offense listed in Guidelines § 4A1.2(c)(1) or (c)(2). Guidelines § 4A1.2 cmt. n.12. The Second Circuit has stated that in order to determine whether an unlisted offense is "similar" to an offense listed in § 4A1.2(c), a district court must analyze whether the offense is "categorically more serious than" the listed offense by examining the following factors: (1) a comparison of punishments imposed for the listed and unlisted offenses, (2) the perceived seriousness of the offense as indicated by the level of punishment, (3) the elements of the offense, (4) the level of culpability involved, (5) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct, (6) the actual conduct involved, and (7) the actual penalty imposed. *Potes-Castillo*, 638 F.3d at 113–14; *United States v. DeJesus-Concepcion*, 607 F.3d 303, 304–05 (2d Cir. 2010); *United States v. Ubiera*, 486 F.3d 71, 75 (2d Cir. 2007).

Under § 4A1.2(c)(1), certain misdemeanor and petty offenses, or offenses similar to them, are counted only if "(A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to the instant offense." Guidelines § 4A1.2(c)(1). Defendant was sentenced to 15 days of imprisonment and a year of conditional discharge, neither of which brings the 2011 offense within the ambit of § 4A1.2(c)(1), provided his 2011 offense is not "categorically more serious" than the offenses such as careless or reckless driving.[17] *See Potes-Castillo*, 638 F.3d at 113–14; *Gonzales-Rivera*, 2011 WL 4916395, at *2 ("[The d]efendant's DWAI offense will count toward his criminal

---

[16] The Government did not address this possibility.

[17] The Court conducts this comparison below.

history only if it is categorically more serious than reckless driving.").

By contrast, § 4A1.2(c)(2) specifies that sentences for certain petty offenses, most relevantly, "minor traffic infractions (*e.g.*, speeding)" and "public intoxication," are "never counted [toward criminal history]." Guidelines § 4A1.2(c)(2).

A first-time DWAI offense in New York is a traffic infraction punishable by a term of imprisonment not to exceed fifteen days, and/or a fine between $300 and $500. *See* VTL § 1193.1(a). A first-time reckless driving offense is a misdemeanor punishable by a term of imprisonment not to exceed 30 days and/or a fine not to exceed $300. *Id.* § 1801. Where a driver exceeds the speed limit in New York by more than ten miles per hour but less than thirty miles per hour, the traffic infraction is punishable by a term of imprisonment not to exceed fifteen days, and/or a fine between $90 and $300. *Id.* § 1180.1. While New York state has no law prohibiting public intoxication, violations of the New York law prohibiting public annoyance under the influence of drugs carry a fine of no more than $250 and/or a term of imprisonment up to fifteen days. *See* N.Y. Penal Law §§ 70.15, 80.05, 240.4.

Based on a comparison of punishments, the severity of a DWAI offense in New York appears to fall between that of speeding, a "minor traffic infraction" categorically excluded under § 4A1.2(c)(2), and reckless driving, an offense only counted if a defendant's then-sentence or current conviction are of a particular length or nature not before the Court, § 4A1.2(c)(1). Further, in considering the "actual conduct involved" and the "actual penalty imposed," *Potes-Castillo*, 638 F.3d at 113–14, discussed above, the Court finds that the 2011 offense under § 1192.1 must be excluded from Defendant's criminal history calculation.

13

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for a correction of his criminal history calculation.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 11, 2016
 Brooklyn, New York